DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN
APPELLATE DIVISION

ASWA MILLS,                          )
                                     ) D.C. Crim. App. No. 2002-157
            Appellant               )   Terr. Ct. Crim. No. F47/2000
                                     )
                                     )
            v.                       )
                                     )
PEOPLE OF THE VIRGIN ISLANDS,        )
                                     )
            Appellee.               )
                                     )
_____)

On Appeal from the Superior Court of the Virgin Islands,
The Honorable Ive Swan, presiding

Considered: June 24, 2011
Filed: November 14, 2013

BEFORE: **CURTIS V. GÓMEZ**, Chief Judge of the District Court of the
Virgin Islands; **RAYMOND L. FINCH**, Judge of the District Court of
the Virgin Islands; and **HAROLD WILLOCKS**, Judge of the Superior
Court of the Virgin Islands, Division of St. Croix, sitting by
designation.

**Appearances:**

**Ashlee M. Gray, Esq.**
St. Thomas, VI
      *Attorney for Appellant, Aswa Mills,*

**Matthew C. Phelan, Esq.**
**Maureen Phelan, Esq.**
St. Thomas, VI
      *Attorneys for Appellee, the Government.*

<div style="border: 1px solid black; text-align: center;">

**MEMORANDUM OPINION**

</div>

**PER CURIAM,**

    Before the Court is the appeal of Aswa Mills ("Mills") of his convictions for first degree murder in violation of V.I. CODE ANN. tit. 14, §§ 921, 922(a)(1), and 922(a)(2); possessing, using, or carrying a dangerous or deadly weapon during the commission of a crime of violence in violation of V.I. CODE ANN. tit. 14, §§ 2251(a)(2)(B), 2253(a), and tit. 23, § 451(d); and attempted robbery in violation of V.I. CODE ANN. tit. 14, §§ 331(2), 1862(1), and 1862(2). For the reasons stated below, the Court will affirm Mills's convictions.

## I. FACTUAL AND PROCEDURAL BACKGROUND

    On January 13, 2000, Mills asked his friend, Michael Caines ("Caines") for a ride to the Contant area of St. Thomas. Mills instructed Caines not to tell anyone that Caines had given him the ride. Caines dropped Mills off near the house of Boniface Clement ("Clement"), who lived at No. 22-14 Contant.

    Clement was outside his house feeding his dog. Mills approached Clement and began speaking with him. In the course of their conversation, Mills said to Clement "Give it to me. Give it to me." (J.A. 137.) Clement told Mills to "cool out." (*Id.* at 151.) Clement then told Mills that he would not give him anything.(*Id.*) Thereafter, the men got into a struggle, and a

*Mills v. Gov't of the V.I.*
D.C. Civ. App. No. 2002-157
Memorandum Opinion
Page 3

firearm was produced.  Mills shot Clement.  Clement suffered a
fatal gun shot wound.

In an amended information, the appellee in this matter, the
Government of the Virgin Islands (the "Government"), charged
Mills with six offenses arising out of the events described
above.  Count One charges Mills with first degree murder, namely
murdering Clement willfully, deliberately, and with
premeditation.  Count Two charges Mills with first degree murder,
namely murdering Clement during the perpetration or attempt to
perpetrate a robbery.  Counts Three and Six charge Mills with
possessing, using, or carrying a dangerous or deadly weapon
during the commission of a crime of violence.  Counts Four and
Five charge Mills with attempted robbery.

On February 22, 2002, a jury convicted Mills of all counts.
Mills made a motion for a judgment of acquittal at the close of
the Government's evidence and again at the close of his case-in-
chief.  The trial court denied both motions.

On March 19, 2002, Mills filed a *pro se* notice of appeal.
By that time, Mills was convicted of assault in a trial court
criminal case docketed as criminal number 525/1999. The March 19,
2002, notice of appeal referenced case number 525/1999, rather
than referencing case number F47/2000. In June of 2004, the
Government moved to dismiss the appeal. The Government argued

*Mills v. Gov't of the V.I.*
D.C. Crim. App. No. 2002-157
Memorandum Opinion
Page 4

that Mills's notice of appeal was fatally defective.

The Court granted the Government's motion finding that the notice of appeal fell short of the mandates of Virgin Islands Rule of Appellate Procedure 4(c), which requires that a notice "designate the judgment . . . appealed from." VIRAP 4(c).  We found Mills's notice deficient because it listed the case number and trial date of another criminal matter involving Mills.

Mills appealed that determination to the Court of Appeals for the Third Circuit.  The Third Circuit found that despite Mills's notice of appeal being "rife with errors," in liberally construing his *pro se* notice of appeal, it provided adequate notice of the matter being appealed. The Third Circuit reversed and remanded for further proceedings.

Mills raises four issues on appeal. The first issue is whether there was sufficient evidence upon which a rational juror could convict Mills beyond a reasonable doubt. The second issue is whether the prosecutor's conduct during the opening argument, when questioning witnesses, and in totality, denied Mills his right to a fair trial. The third issue is whether the trial court gave an improper jury instruction as to the definition of "self-defense." The fourth issue is whether Mills is entitled to a new trial on the basis of ineffective assistance of counsel.

*Mills v. Gov't of the V.I.*
D.C. Crim. App. No. 2002-157
Memorandum Opinion
Page 5

## II.   <u>DISCUSSION</u>

### A.   Jurisdiction

The Court has jurisdiction to review criminal judgments and orders of the Superior Court in cases in which the defendant has been convicted, and has not entered a guilty plea. *See* V.I. CODE ANN. tit. 4, § 33 (2006); Revised Organic Act of 1984, 28 U.S.C. § 1613(a) (2006).

### B.   Standard of Review

#### 1.   Sufficiency of the Evidence

The standard of review for a sufficiency of the evidence claim is plenary. *United States v. Taftsiou*, 144 F.3d 287, 290 (3rd Cir. 1998).  In determining the sufficiency of the evidence for a conviction, the Court looks at the evidence in the light most favorable to the government.  The jury verdict is sustained "if any rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence." *United States v. Wolfe*, 245 F.3d 257, 261 (3rd Cir. 2001) (citing *Jackson v. Virginia*, 443 U.S. 307 (1979)).  An appellant that attempts to challenge the sufficiency of the evidence bears a heavy burden. *United States v. Gonzalez*, 918 F.2d 1129, 1132 (3rd Cir. 1990) (citing *United States v. Losada*, 674 F.2d 167, 173 (2nd Cir. 1982)).

*Mills v. Gov't of the V.I.*
D.C. Crim. App. No. 2002-157
Memorandum Opinion
Page 6

## 2. Prosecutorial Misconduct

A reviewing court employs a harmless error test in determining whether a conviction should be overturned on account of prosecutorial misconduct. *United States v. Lore*, 430 F.3d 190, 210 (3d Cir. 2005). "The harmless error doctrine requires that the court consider an error in light of the record as a whole, but the standard of review in determining whether an error is harmless depends on whether the error was constitutional or non-constitutional." *Zehrbach*, 47 F.3d at 1265. "Improper conduct only becomes constitutional error when the impact of the misconduct is to distract the trier of fact and thus raise doubts as to the fairness of the trial." *Marshall v. Hendricks*, 307 F.3d 36, 67 (3d Cir. 2002) (citing *Berger v. United States*, 295 U.S. 78, 88 (1935)).

"[N]on-constitutional error is harmless when 'it is highly probable that the error did not contribute to the judgment.'" *Id.* (quoting *Government of Virgin Islands v. Toto*, 529 F.2d 278, 284 (3d Cir. 1976)). "'High probability' requires that the court possess a 'sure conviction that the error did not prejudice' the defendant." *Id.* (quoting *United States v. Jannotti*, 729 F.2d 213, 219-20 (3d Cir. 1984)). "If the error was constitutional, the court may affirm 'only if the error is harmless beyond a reasonable doubt.'" *Id.* (quoting *United States v. Molina-Guevara*,

*Mills v. Gov't of the V.I.*
D.C. Crim. App. No. 2002-157
Memorandum Opinion
Page 7

96 F.3d 698, 703 (3d Cir. 1996)).

### 3. Jury Instructions

In reviewing jury instructions, a court reviews the trial court's expression for abuse of discretion. *United States v. Zehrbach*, 47 F.3d 1252, 1264 (3d Cir. 1995) (citations omitted), *cert. denied*, 514 U.S. 1067 (1995). A court must consider "whether, viewed in light of the evidence, the charge as a whole fairly and adequately submits the issues in the case to the jury." *Bennis v. Gable*, 823 F.2d 723, 727 (3d Cir. 1987). A court must reverse if "the instruction was capable of confusing and thereby misleading the jury." *Id.* (citing *United States v. Fischbach and Moore, Inc.*, 750 F.2d 1183 (1984)); *United States v. Goldblatt*, 813 F.2d 619, 623 (3d Cir. 1987).

Nevertheless, "[a] single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *United States v. Dixon*, 201 F.3d 1223, 1230 (9th Cir. 2000). Moreover, "we do not engage in a technical parsing of [isolated] language of the instructions, but instead approach the instructions in the same way that the jury would – with a 'commonsense understanding of the instructions in the light of all that has taken place at the trial.'" *Johnson v. Texas*, 509 U.S. 350, 368 (1993) (emphasis added) (quoting *Boyde v. California*, 494 U.S. 370, 381 (1990)). "In reviewing jury

*Mills v. Gov't of the V.I.*
D.C. Crim. App. No. 2002-157
Memorandum Opinion
Page 8

instructions, the relevant inquiry is whether the instructions as

a whole are misleading or inadequate to guide the jury's

deliberation." *United States v. Frega*, 179 F.3d 793, 806 n.16

(9th Cir. 1999) (emphasis added) (citing *United States v. Moore*,

109 F.3d 1456, 1465 (9th Cir.) (en banc), *cert. denied*, 522 U.S.

836 (1997)).

The Supreme Court has explained that "not every ambiguity,

inconsistency, or deficiency in a jury instruction rises to the

level of a due process violation." *Middleton v. McNeil*, 541 U.S.

433, 437 (2004).  If the jury instructions "as a whole [are]

ambiguous, the question is whether there is a 'reasonable

likelihood that the jury has applied the challenged instruction

in a way that violates the Constitution.'" *Id.* (internal

quotation omitted) (quoting *Estelle v. McGuire*, 502 U.S. 62, 67

(1991)).

## 4. Ineffective Assistance of Counsel

To prevail on an argument of ineffective assistance of

counsel, a defendant must show both deficiency in performance and

prejudice. *Strickland v. Washington*, 466 U.S. 668, 700 (1984).

"The 'deficiency' step asks whether counsel's conduct 'fell below

an objective standard of reasonableness' viewed as of the time it

occurred." *United States v. Baird*, 218 F.3d 221, 226 (3d Cir.

2000) (citing *Strickland*, 466 U.S. at 688, 690; *United States v.*

*Mills v. Gov't of the V.I.*
D.C. Crim. App. No. 2002-157
Memorandum Opinion
Page 9

*Gray*, 878 F.2d 702, 711 (3d Cir. 1989)).  "The 'prejudice'

prerequisite asks whether 'there is a reasonable probability

that, but for counsel's unprofessional errors, the result of the

proceeding would have been different." *Id.* (citing *Strickland*,

466 U.S. at 694; *United States v. Headley*, 923 F.2d 1079, 1083

(3d Cir. 1991)).

## IV. ANALYSIS

### A. Sufficiency of the Evidence

According to Mills, the evidence adduced at trial is

insufficient to sustain his convictions for first degree murder

and attempted robbery.

#### 1. First Degree Murder

Mills concedes that he killed Clement. He simply argues that

the record was devoid of evidence of premeditation or

deliberation with respect to the killing of Clement.

The Virgin Islands Code defines murder as the "unlawful

killing of a human being with malice aforethought." V.I. CODE ANN.

tit. 14, § 921.  It further provides that first degree murder is:

a) All murder which-

(1) is perpetrated by means of poison, lying in wait,
torture, detonation of a bomb or by any other kind of
willful, deliberate and premeditated killing;

(2)  is committed in the perpetration or attempt to
perpetrate arson, burglary, kidnapping, rape, robbery or

*Mills v. Gov't of the V.I.*
D.C. Crim. App. No. 2002-157
Memorandum Opinion
Page 10

> mayhem, assault in the first degree, assault in the
> second degree, assault in the third degree and larceny;
> ...

*Id.* at § 922(a).

In *Gov't of the V.I. v. Lake*, 362 F.2d 770, 775 (3d Cir.
1966), the Court of Appeals for the Third Circuit described the
earmarks of a premeditated killing:

> A deliberate killing is one which has been planned and
> reflected upon by the accused and is committed in a cool
> state of the blood, not in sudden passion engendered by
> just cause of provocation. It is not required, however,
> that the accused shall have brooded over his plan to
> kill or entertained it for any considerable period of
> time. Although the mental processes involved must take
> place prior to the killing, a brief moment of thought
> may be sufficient to form a fixed, deliberate design to
> kill.

*Lake*, 362 F.2d at 775.

"[T]he law recognizes the near impossibility of proving
one's state of mind by direct evidence." *United States v.
Applewhaite*, 195 F.3d 679, 690 (3d Cir. 1999). "[S]ince it is
impossible to photograph the mental processes of a killer, and
since it is folly to expect that a killing will be explained by a
killer's explanation of any specific intent accompanying the act,
circumstantial evidence is usually the only possible proof of the
mental processes involved." *United States v. Lawrence*, 349 F.3d
109, 121 (3d Cir. 2003).

*Mills v. Gov't of the V.I.*
D.C. Crim. App. No. 2002-157
Memorandum Opinion
Page 11

In *Government of the Virgin Islands v. Charles*, 72 F.3d 401 (3d Cir. 1995), the Court considered the sufficiency of evidence as to the premeditation of a stabbing in an alley.  The defendant, Dale Charles "entered [an] alley" and "rushed [the victim] without provocation and stabbed him several times." *Gov't of the V.I. v. Charles*, 72 F.3d 401, 403 (3d Cir. 1995).  The Court pointed to the fact that, "preceding the attack there was no provocation by the victim or conversation between the two." *Id*. at 411.  Moreover, "[t]here was no evidence suggesting that the attack was initiated in the heat of passion." *Id*.

The Court noted that the hurriedness of the attack did not necessitate a finding that there was no premeditation. *Id*.  Indeed, "a brief moment of thought can be sufficient." *Id*.  The Court determined that "the use of a knife" coupled with "the absence of any provocation or display of emotion by [the victim]" provided a sufficient basis for the jury to reasonably conclude that premeditation existed. *Id*.

In *United States v. Lawrence,* 349 F.3d 109 (3d Cir. 2003), the Third Circuit found sufficient evidence of premeditation where the defendant told his victim, "It's you I come for" and then shot him three times. The *Lawrence* Court noted that all of the shots were fired at "extremely close range from a .38," and were shot as the victim was backing away, "in an apparent attempt

*Mills v. Gov't of the V.I.*
D.C. Crim. App. No. 2002-157
Memorandum Opinion
Page 12

to flee." *Id.*

Mills argues that unlike the defendant in *Charles,* the
evidence suggests that he was provoked prior to the shooting.  He
highlights testimony from Clement's wife, Shirley Clement, and
Clement's brother, Bernard Henry ("Henry") that Mills and Clement
were wrestling immediately prior to the shooting.  He asserts
that the tumult of the struggle undermines a theory that the
killing of Boniface Clement was premeditated.

Mills relies on his version of events offered in his
testimony, wherein he cited Boniface Clement as the aggressor of
the disturbance between the men.  Mills testified that Clement
signaled Mills to visit his yard.  Mills complied and Clement
asked Mills what he wanted.  Mills said he was looking for an
individual, named "Seala."  Mills told Clement that he was "gonna
get something from him," and that he had $1000. (J.A. 533.)  He
also produced a small power drill that he had in his possession.
Clement then told Mills he had some tools that he was selling.
Clement turned to a door at the back of the yard in an apparent
move to retrieve some tools, and instead pulled out a gun and
said "don't go, give me everything." (*Id.* at 44.)  Mills
testified that the men then struggled over the gun, and Mills
gained control over the gun.  Mills told Clement to "cool out,"
and pulled the gun to his side.  Clement however did not relent,

*Mills v. Gov't of the V.I.*
D.C. Crim. App. No. 2002-157
Memorandum Opinion
Page 13

and attacked Mills.  Another struggle ensued, and in the midst of this struggle Mills heard two shots go off.

The Court notes that a reasonable jury could have rejected the version of events offered by Mills and found more credible the version provided by Shirley Clement and Henry. Their testimony suggested that as in *Lawrence*, Mills approached Clement aggressively.  Mills demanded that Boniface Clement give him something, and brandished a weapon that was produced from Mills's person.  The men struggled over the weapon.  Mills separated himself from Boniface Clement, and stood over Clement as he lay on the ground, and shot Clement at close range. Viewing the evidence in the light most favorable to the Government, a reasonable jury could find these acts demonstrative of premeditation.

### 2. Attempted Robbery

The Virgin Islands Code defines robbery as "the unlawful taking of personal property in the possession of another, from his person or immediate presence and against his will, by means of force or fear." 14 V.I.C. § 1861.  Mills contends that the record fails to evince evidence that he attempted to take personal property by such means.

Mills points to responses by Shirley Clement and Henry to

*Mills v. Gov't of the V.I.*
D.C. Crim. App. No. 2002-157
Memorandum Opinion
Page 14

questions from the prosecutor about whether they believed that
Mills was attempting to rob Clement. In response to that
question, Henry answered, "[u]p to now I can't say yes, I can't
say no." (J.A. 29.) Shirley responded, "I wouldn't know." (*Id.* at
206.) Those responses however draw on the reaction of lay persons
to viewing the events, as opposed to assessments rooted in the
law.

The evidence at trial bearing on the essential elements of
the crime supports a different conclusion. Shirley Clement
testified that she heard Mills commanding Boniface Clement to
hand over something, saying, "Give it to me," three times. (*Id.*
at 197). Both Shirley Clement and Henry testified that Boniface
Clement responded that he had nothing to give Mills.[1]
Thereafter, Clement and Henry testified there was a struggle
between the men, and Mills shot Boniface Clement. Viewing this
evidence, in the light most favorable to the Government, the
Court finds that there was a sufficient basis for a reasonable
jury to find that the defendant attempted to rob Boniface Clement
in violation of Virgin Islands law.

**B. Prosecutorial Misconduct**

Mills next argues that the Government's attorneys made

_____

[1]Henry testified that he heard Boniface clement say "no, Aswa, I don't
have anything for you" (J.A. at 170.) Shirley Clement testified that, Boniface
Clement responded "What have I for you? I have nothing for you." (*Id.* at 197).

*Mills v. Gov't of the V.I.*
D.C. Crim. App. No. 2002-157
Memorandum Opinion
Page 15

improper comments during opening and closing arguments, as well as during their examination of witnesses, that interfered with his right to a fair trial.

The Court applies a two-part test in assessing prosecutorial misconduct. First, we must determine whether the conduct in question was improper. If so, we must then ask whether, in the context of the trial as a whole, the misconduct created sufficient prejudice as to violate the defendant's due process rights. *See Marshall v. Hendricks,* 307 F.3d 36, 63-64 (3d Cir. 2002).

## 1. Opening Statement

Mills argues that the prosecutor improperly used his opening statement to suggest that Mills posed a direct threat to the sanctuary of the homes of the jurors:

> It is 3:40, everyone in this courtroom wants to go home
> 'cause home is a safe place.  It is home sweet home.
> There is no place like home.  We have our house there,
> it's comfortable, we feel safe at home.  That's why you
> don't want me talking too much 'cause you want to get
> home, you want to beat the traffic, you want to get home.
> But let me tell you how home sweet home and there's no
> place like home can be ruined.  It can be ruined by Aswa
> Mills.
>
>                         . . . .
>
> Home sweet home.  We have to draw a line in the sand.  We
> got to be safe at our homes.  It's not enough to just
> lock the door, check that the windows are close.  We got
> to stop these Aswa Mills from coming into our home and

*Mills v. Gov't of the V.I.*
D.C. Crim. App. No. 2002-157
Memorandum Opinion
Page 16

> ruining our lives.  Theirs is no place like home.  You
> remember the Wizard of Oz, Dorothy, clicking her [heels].
> No place like home.  There's no place like home.  We have
> to be safe in our homes.  And then we have a gun.  The
> gun is gone.  This defendant had enough time to get rid
> of the gun.  Anybody can have this gun.  Instrument of
> death.

(J.A. 122, 136.)

"The purpose of an opening statement is to preview the
evidence and make the trial easier for the jury to follow."
*Holmes v. McGuigan*, 184 Fed Appx. 149, 152 (3d Cir.
2006)(unpublished).  Counsel's exposition about the *Wizard of Oz*
offers no such preview, and instead seems to be an appeal to
fear.  "[T]here must be limits to pleas of pure passion," *Draper
v. Airco, Inc.*, 580 F.2d 91, 97 (3d Cir. 1978), and this sort of
rhetorical flourish falls outside the "legitimate functions of an
opening statement." *Stanton by Brooks v. Astra Pharma. Prods.,
Inc.*, 718 F.2d 553, 579 (3d Cir. 1983).  Notwithstanding the
improper emotional appeal, the Court does not find that the
excursive discussion prejudiced the outcome of the trial to the
extent that a new trial is appropriate.  *See United States v.
Aviles-Colon*, 536 F.3d 1, 25 (1st Cir. 2008)(finding it unlikely
that isolated remark tying the drugs and violence issues in
defendant's case to the greater problems of drugs and violence in
Puerto Rico prejudiced the outcome of the case).

*Mills v. Gov't of the V.I.*
D.C. Crim. App. No. 2002-157
Memorandum Opinion
Page 17

## 2. Examination of Witnesses

Mills also contends that the prosecutor continued to stray beyond the bounds of propriety when asking Shirley Clement about the emotional toll of Boniface Clement's death.  In response to this line of inquiry, Shirley Clement testified that "[e]very night my kids get up in the bed, they want to see their father, especially my little boy." (*Id.* at 225.)

Mills also challenges the prosecutor's questions about where Mills dropped the gun following the shooting.  He notes that the prosecutor elicited testimony from Mills regarding the proximity of the place the gun was dropped to a nearby school, an issue not bearing on any elements of the crimes charged:

> Q: So there was a gun that was involved in a shooting
> that you dropped off?
> A: Yes.
> Q: And you don't remember where?
> A: Can't recall.
>      . . . .
> Q: Mr. Mills, do you know where Ulla Muller School is
> located?
> A: Yes.
> Q: Is it in that area of Contant?
> A: I can't recall.
> Q: But you know where the school is located?
> A: Yes.
> Q: Did you drop that gun anywhere near that school?
> A: In the Contant area.
> Q: So if I told you Ulla Muller School was in the Contant
> area, that would be near the area where you drop [sic]
> that gun?
> A: Yes.

(J.A. 578-79.)

*Mills v. Gov't of the V.I.*
D.C. Crim. App. No. 2002-157
Memorandum Opinion
Page 18

Both lines of questioning were irrelevant to the offenses charged.[2] *Compare Gov't of the V.I. v. Turbe*, 304 Fed.Appx. 76, 78 (3d Cir. 2008)(unreported)(noting that the prosecutor's line of questioning as to an earlier, unrelated interaction between the defendant and the F.B.I., was irrelevant as to the firearm charge faced by the defendant).  Nevertheless, the questions represented brief deviations from the majority of the prosecutor's appropriate inquiry into the events surrounding the shooting of Clement.  In light of the substantial body of evidence presented at trial, the Court does not find that the challenged lines of questioning were of the character warranting reversal. *See United States v. Hyatt*, 565 F.2d 229, 233 (2d Cir. 1977)(declining to find that the prosecutor's line of questioning about the damages suffered by victims of forgery scheme required a new trial "given the length of the trial and the relative paucity of offending material").

## 3. Closing Statement

The prosecutor included allusions to the potential for the gun discarded by Mills to fall into the hands of school children in his closing argument:

---

[2]Mills failed to object to the questioning at trial. He asserts that his counsel's failure to object supports one of his other arguments on appeal, that his counsel provided inadequate representation.

*Mills v. Gov't of the V.I.*
D.C. Crim. App. No. 2002-157
Memorandum Opinion
Page 19

> After Aswa Mills inflicted those shots he fled the
> scene. . . . And as he fled the scene he had a gun in his
> hand. And he testified he threw it away. He didn't know
> where he threw it away, but ladies and gentleman, in that
> same area are not one, but two schools, two schools where
> innocent little kids walk and travel that path. They
> live in that area. They travel that area all the time.
>
> The gun is out there. What if one of them finds
> that gun that he so casually threw away? What if one of
> them finds that gun and accidentally shot one of their
> friends or some relative? That gun has one body on it.
> It already ruined one home. Now it's out there
> potentially to ruin somebody else's home.

(*Id.* at 631.)

"The purpose of summations is for the attorneys to assist

the jury in analyzing, evaluating and applying *the evidence.*"

*United States v. Pelullo*, 964 F.2d 193, 219 (3d Cir.

1992)(quoting *United States v. Morris*, 568 F.2d 396, 401 (5th

Cir. 1978)(emphasis in original)). The prosecutor's pure

speculation about the dire fate that could become of the murder

weapon is unconnected to the evidence of the crimes. Rather, it

seems nothing more than a ploy to inflame the passions of the

jury.

Mills also challenges the following aspects of the

prosecutor's presentation of his closing: (1) the prosecutor's

display of a graphic autopsy photograph throughout his argument,

(2) the prosecutor's comments that the Government's witnesses

"did not come here to lie. They came here to testify about the

*Mills v. Gov't of the V.I.*
D.C. Crim. App. No. 2002-157
Memorandum Opinion
Page 20

truth. . . .", and (3) the prosecutor's characterization of the testimony of the medical examiner, Dr. Francisco Landron. (*Id*. at 683.)

The prosecutor projected a photo of Clement, during the entirety of his closing argument.  After the conclusion of closing arguments, the trial judge questioned the prosecutor about his reason for featuring the photo, and the prosecutor responded "[s]trategy." (J.A. at 691.) The trial judge observed that it was curious that though the photo was displayed throughout his closing, the prosecutor failed to refer to it. Although the photo was in evidence and could permissibly be used during closing argument, its use as a mere backdrop to the prosecutor's closing seems excessive.  However, despite its questionable use, we do not find that it resulted in prejudice that rendered the trial unfair. *Cf. United States v. McGhee*, 532 F. 3d 733, 741 (8th Cir. 2008)(finding that a collage displayed during closing which juxtaposed a picture of the defendant facing robbery charges with a photo of the robbery suspect, taken at the time of the robbery was not unfairly prejudicial).

The Court next turns to the prosecutor's statements about the credibility of the Government witnesses.  It is improper for a prosecutor to vouch for the credibility of government witnesses in the course of his closing argument. *See United States v.*

*Mills v. Gov't of the V.I.*
D.C. Crim. App. No. 2002-157
Memorandum Opinion
Page 21

*Young*, 470 U.S. 1, 18-19 (1985)("The prosecutor's vouching for

the credibility of witnesses and expressing his personal opinion

... carries with it the imprimatur of the Government and may

induce the jury to trust the Government's judgment rather than

its own view of the evidence.")   The prosecutor's comments that

the Government witnesses "came to tell the truth," were thus

inappropriate.   The court's final instruction cautioned the jury

that they were "the sole judges of the credibility of the

witnesses" who testified. (J.A. at 720.)   This instruction

mitigated any prejudicial effect of the prosecutor's remarks

about the Government witnesses' credibility.

The medical examiner, Dr. Landron testified about the

results of his autopsy of Boniface Clement.   Landron stated that

there were two bullets that entered Clement's body, with the

fatal bullet causing a wound to the abdomen that led to massive

internal bleeding.   Landron was questioned about the trajectory

of that bullet, and what it indicated about the position Clement

was in at the time of the shooting, and testified:

> A. The trajectory could be produced by many positions but
> would be consistent with a standing position or even a
> sitting position.
> Q. Would it be inconsistent if the person was lying down
> flat on their back?
> A. Yes, it would be.
> Q. It would be inconsistent or consistent?
> A. . . . [I]nconsistent because --I'm sorry, you said
> lying on the back?
> Q. Right.

*Mills v. Gov't of the V.I.*
D.C. Crim. App. No. 2002-157
Memorandum Opinion
Page 22

> A. Yes, it can also be consistent as long as the person
> that fired the gun was standing at an angle where that
> trajectory would be produced.

(J.A. at 376.)

The prosecutor during his closing suggested that Landron's

testimony ruled out the possibility that Boniface Clement was

standing when he was shot:

> Then there's the second shot.  This was the deadly shot.
> This was the shot that ended the life of Boniface
> Clements [sic].   This was the shot that was inflicted
> while he was lying on the ground, and we know that
> because Dr. Landron told you the only way that shot would
> have entered at the angle to break the pelvic bone or
> femur artery, if the person was sitting down or lying
> down, not standing up, just like Shirley Clements [sic]
> told you; just like Bernard Henry told you.

(*Id.* at 629.)

The prosecutor's characterization of the testimony was

undoubtedly in error.   However, given its brevity, and the great

weight of the other evidence presented, we do not find that his

incorrect statement of Landron's testimony requires a new trial.

*See United States v. Martin,* 46 Fed. Appx. 119, 122 (3d Cir.

2002)(rejecting appellant's argument that a new trial was

required based on prosecutor's misstatement of the testimony of

expert examiner of photographic evidence where there "was ample

evidence for the jury to determine [the defendant's guilt]").

The Court is troubled by the several instances at trial,

where the prosecutor favored brief diversions into extraneous

*Mills v. Gov't of the V.I.*
D.C. Crim. App. No. 2002-157
Memorandum Opinion
Page 23

subject matters over a steady engagement of the facts of the
case. Notwithstanding the irrelevance of this material, the
Court does not find, based on a review of the totality of the
circumstances, that the prosecutor's conduct resulted in
prejudice that "undermine[d] the fundamental fairness of the
trial" or "contribute[d] to a miscarriage of justice." *Young,* 470
U.S. at 16. As such, we do not find cause to reverse Mills's
convictions on these grounds.

### C. Jury Instructions

Mills through his testimony at trial argued that he killed
Boniface Clement in self defense. Under Virgin Islands law,
"there must be not only the belief but also reasonable ground for
believing that at the time of the killing the deceased, the party
killing was in imminent or immediate danger of his life or great
bodily harm." 14 V.I.C § 43. The Court of Appeals for the Third
Circuit has noted that "[s]elf-defense hinges on the
reasonableness of the defendant's *subjective* beliefs." *Gov't of
the V.I. v. Smith,* 949 F.2d 677, 684 (3d Cir. 1991)(emphasis
supplied).

Mills argues that the trial court erred in instructing the
jury as follows: "The defense hinges on the defendant's *objective*
belief a imminent danger of death or serious bodily harm are
[sic] not on the objective reasonableness of the belief." (J.A.

*Mills v. Gov't of the V.I.*
D.C. Crim. App. No. 2002-157
Memorandum Opinion
Page 24

at 720.)(emphasis supplied). Mills failed to object to that
instruction at trial. As such, the Court reviews the instruction
for plain error. *United States v. Ozcelik*, 527 F.3d 88, 96 (3d
Cir. 2008).

Plain error occurs where "the error prejudiced the outcome,
the defendant is actually innocent, or the error seriously
affected the fairness, integrity, or public reputation of the
judicial system." *United States v. Gordon*, 290 F.3d 539, 545 (3d
Cir. 2002)(quoting *United States v. Olano*, 507 U.S. 725, 735-36
(1993)).

The instructions erroneously substituted "objective" in
place of "subjective" when describing the belief necessary to
trigger one's right to self-defense. That misstatement of the
applicable law however, did not manifestly interfere with the
defendant's right to a fair trial. Mills's theory of self-
defense was premised on his testimony that Clement was the
aggressor, and that Clement committed an attempted robbery that
compelled Mills to action. There was no evidence presented that
the particular history or sensibility of Mills caused him to
perceive Clement's actions any differently than the paradigmatic
"reasonable person." The Court is thus not convinced that the
error prejudiced the outcome or substantially affected the
fairness of the trial.

*Mills v. Gov't of the V.I.*
D.C. Crim. App. No. 2002-157
Memorandum Opinion
Page 25

### D. Ineffective Assistance

Under the Sixth Amendment, criminal defendants have the right to effective assistance of counsel. Generally, ineffective assistance of counsel claims are limited to collateral review. *United States v. Gambino,* 788 F.2d 938, 950 (3d Cir. 1986). We will consider ineffective assistance of counsel claims on direct appeal only if the trial record clearly reflects the grounds therefor. *Id.* Only where the record is sufficient to establish ineffective assistance of counsel without an evidentiary hearing may we decide such claims. *United States v. McLaughlin,* 386 F.3d 547, 556 (3d Cir.2004).

Mills argues that his trial counsel was ineffective for failing to object to the improper comments in the prosecutor's opening statement and closing arguments. However, Mills's claims are not cognizable on direct appeal, as the record precludes a comprehensive inquiry into the strategy and tactics behind counsel's decisions not to interpose such objections. *See id.* ("Where a claim of ineffective assistance of counsel is based on attorney incompetence, the lack of a fully developed record often precludes a comprehensive inquiry into the elements of strategy or tactics that may have entered into defense counsel's challenged decision.").

*Mills v. Gov't of the V.I.*
D.C. Crim. App. No. 2002-157
Memorandum Opinion
Page 26

## V. <u>CONCLUSION</u>

For the foregoing reasons, the February 22, 2002, judgment of the Superior Court will be affirmed.  An appropriate order follows.